IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON WAYNE BELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-3368 |
| MEDLINE et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Medline Industries LP ("Medline") and Ernest Field's (collectively, "Defendants") Motion to Dismiss (ECF No. 16). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the motion.

### I.   BACKGROUND

**A.   Factual Background**[1]

Self-represented Plaintiff Aaron Wayne Bell, a Black man, was employed by Medline from February 16, 2024 to June 12, 2024 as an "Operational Picker." (Equal Employment Opportunity Commission ("EEOC") Charge at 1, ECF No. 1-3).[2] Bell suffers

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526

from various mental disorders. (Compl. at 6, ECF No. 1).[3] On or about June 12, 2024, Bell emailed Medline's headquarters to describe an incident that took place at the Medline branch where he worked. (Compl. at 6; EEOC Charge at 1). Bell alleges that his heart rate was elevated and he showed the "Branch" his "BPM" of "146–152" twice, but the "Branch" never called 911 for help. (Compl. at 6). Bell was discharged on or about June 12, 2024 for "wearing a bluetooth." (EEOC Charge at 1). Bell alleges that by discharging him Defendants discriminated against him on the basis of his race and disability and that Defendants failed to provide him with a reasonable accommodation for his disability. (Compl. at 6; EEOC Charge at 1).

**B.     Procedural History**

In July 2024, Bell filed a charge of discrimination with the EEOC. (EEOC Charge at 1). The EEOC issued a Right to Sue Letter on November 14, 2024. (EEOC Determination and Notice of Rights at 1, ECF No. 1-3).

Bell filed this action on November 21, 2024. (ECF No. 1). He makes the following claims: race discrimination under Title VII; disability discrimination under the Americans with Disabilities Act ("ADA"); and failure to accommodate under the ADA. (Compl. at 6–

---

n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the U.S. Equal Employment Opportunity Commission ("EEOC") charge of discrimination is attached to the Complaint and is clearly integral to Bell's complains of discrimination. There is no dispute as to its authenticity. Accordingly, the Court will consider the EEOC charge of discrimination in resolving this Motion to Dismiss.
   [3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

2

7). Bell seeks compensatory damages. (Civil Cover Sheet at 1, ECF No. 1-1). Defendants filed the instant Motion to Dismiss on January 24, 2025. (ECF No. 16). Bell filed an Opposition on February 7, 2025, (ECF No. 19), and Defendants filed a Reply on February 21, 2025, (ECF No. 20).

## II.   DISCUSSION

### A.   Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Spencer v. Earley, 278 F.App'x 254, 259–60 (4th Cir. 2008) ("Dismissal of a pro se complaint . . . for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972))). Nonetheless, "liberal construction does not absolve Plaintiff from pleading a plausible claim." Desgraviers v. PF Frederick, LLC, 501 F.Supp.3d 348, 351 (D.Md. 2020) (quoting Bey v. Shapiro Brown & Alt, LLP, 997 F.Supp.2d 310, 314 (D.Md. 2014)).

B.     **Analysis**

1.     **Claims Against Individual Defendant Ernest Field**

Bell brings his Title VII race discrimination and ADA disability discrimination and failure to accommodate claims against Ernest Field in his individual capacity. (Compl. at 1). Under Title VII and the ADA, "supervisors are not liable in their individual capacities" for violations. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (Title VII); See Jones v. Sternheimer, 387 F.App'x 366, 368 (4th Cir. 2010) (ADA); accord Spell v. Wright, RBD-19-722, 2020 WL 247460, at *3 (D.Md. Jan. 16, 2020) (dismissing Title VII claims against employees). Rather, a person can be held liable in his or her individual capacity only if that person qualifies as an "employer" within the meaning of the statute. See Brooks v. Arthur, 626 F.3d 194, 203 (4th Cir. 2010) ("Title VII 'foreclose[s] individual liability'") (quoting Lissau, 159 F.3d at 180). Bell identifies Medline as his employer, and Bell does not allege that Field was his employer. (EEOC Charge at 1). Accordingly, Field cannot be held liable in his individual capacity for a Title VII or ADA violation, and the Court will dismiss Bell's claims against Field with prejudice.

2.     **Racial and Disability Discrimination Claim**

Medline argues that Bell's racial and disability discrimination claims, to the extent they are pleaded, fail to state a claim upon which relief may be granted. The Court agrees.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (1).

The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).[4]

A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Carrol v. Ports Am. Chesapeake, LLC, No. GLR-22-3288, 2024 WL 1012882, at *6 (D.Md. Mar. 7, 2024) (quoting Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Bell's claims under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a claim of indirect discrimination or retaliation claim under the McDonnell Douglas burden-shifting framework, Bell must eventually put forth a prima facie case by establishing that:

> (1) he belongs to a protected class;
> (2) he suffered an adverse employment action;

---

[4] The analysis of ADA discrimination claims follows the same framework as a Title VII claim, so the Court's analysis of the Title VII claims shall also constitute its analysis of the ADA claims. See Equal Emp. Opportunity Comm'n v. Mfrs. & Traders Tr. Co., 429 F.Supp.3d 89, 118 (D.Md. 2019) (explaining that an ADA discrimination claim may be proved, like a Title VII claim, via direct or indirect evidence of discrimination).

> (3) at the time of the adverse action, he was performing his job at a level that met his employer's legitimate expectations . . . ; and
>
> (4) he was rejected [or terminated] under circumstances giving rise to an inference of unlawful discrimination.

See Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973), and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). If Bell succeeds in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Id.

Bell has failed to plead sufficient facts to establish a prima facie case of racial discrimination or disability discrimination. Regarding his racial discrimination claims, as a Black man, Bell is a member of a protected class, satisfying the first element. Bell has also satisfied the first element for his disability discrimination claims at this stage because, taking the facts in the light most favorable to Bell and liberally construing his Complaint, he alleges he suffers from a mental disability which substantiality limits one or more major life activities.[5] See 42 U.S.C. § 12102(1); Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d

---

[5] Bell provides details of his alleged disability for the first time in his Opposition to Defendants' Motion to Dismiss. Bell explains that he suffers from bipolar disorder with

562, 570 (4th Cir. 2015) (finding that mental disorders constitute disabilities as defined by the ADA). Bell also suffered an adverse employment action when Medline terminated his employment, satisfying the second element. However, Bell has provided no facts showing that he was performing his job at a level that met Medline's expectations nor that he was terminated under circumstances giving rise to an inference of unlawful discrimination. Bell himself puts forward a non-discriminatory reason that Medline terminated his employment, i.e. "for wearing a Bluetooth." (EEOC Charge at 1). Bell does not argue that this purported reason was pretextual. Bell offers no allegations for the Court to infer that there was any connection between his termination and his race or disability. Bell fails to allege facts to support an inference that Medline treated him differently than those without a qualifying disability or non-Black individuals in terminating his employment. "Without comparator evidence or other evidence allowing the Court to make an inference of discrimination, [Bell's] discrimination claims must fail." Hughley v. Marion, No. GLR-22-1654, 2023 WL 5957185, at *8 (D. Md. Sept. 13, 2023). Consequently, Bell's Title VII and ADA discrimination claims against Medline will be dismissed.[6]

---

borderline personality disorder, which result in "uncontrollable mood swings," and that he is on medicine for the disorders that "attacks [his] organs." (Opp'n at 1). As part of the duty to construe pro se pleadings liberally, courts have authority to consider newly alleged facts in a response to a motion to dismiss, which the Court does so here. See Arije v. Pointcross Life Scis., No. JKB-18-3119, 2019 WL 652426, at *3 (D.Md. Feb. 15, 2019).

[6] To the extent Bell alleges that Defendants' failure to call 911 when he reported an elevated heartrate gives rise to an inference of racial discrimination or disability discrimination, those claims also fail. (Compl. at 6, Opp'n at 1). While failure to call emergency medical services is concerning, it is not an "adverse employment action." See Markel v. Bd. of Regents of Univ. of Wis. Sys., 276 F.3d 906, 911 (7th Cir. 2002)

### 3. Failure to Accommodate

Medline also argues that Bell's failure to accommodate claim must be dismissed for failure to state a claim. The Court agrees.

To plead a failure to accommodate claim, a plaintiff must show:

> (1) that he was an individual who had a disability within the meaning of the statute;
> (2) that the [employer] had notice of his disability;
> (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and
> (4) that the [employer] refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

To establish a failure to accommodate claim, a plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that [Defendant] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that [Defendant] refused to make such accommodations." Id.; see also 42 U.S.C. § 12102(1)(A) (defining disability in part to include "a physical or mental impairment that substantially limits one or more major life activities of such individual").

Bell states in his Opposition that the reasonable accommodation he requested was "to get some fresh air by opening up a few bay doors when the temperature during this time of year was extremely hot, reaching 90 to 100 degrees." (Opp'n at 1).

---

("Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay.").

As discussed, liberally construing Bell's complaint, he satisfies the first element because alleges that he suffered from a bipolar disorder and borderline personality disorder, which result in "uncontrollable mood swings," (Opp'n at 1). Bell claims that he takes medicine to treat his disorders that "attacks [his] organs." (Id.). Bell also separately claims that he gets "overheated quickly," however he does not allege that this overheating is connected to his bipolar disorder, borderline personally disorder, or the related medications. (Id.). Bell also satisfies the second element because he claims that he sent Medline a letter stating his mental health diagnoses. (Id.).

Bell's claim, however, fails to meet the third or fourth element to show that a reasonable accommodation would have allowed him to perform the essential functions of his position or that Medline refused to make a reasonable accommodation. First, Bell does not explain how he requested an accommodation for his alleged disability at all. The only accommodation he purportedly requested was "opening up a few bay doors." (Id.). While opening doors could address his "overheating quickly," as described above, Bell has not connected this overheating to his alleged disability. Further, Bell's filings give the Court no basis to conclude what the essential functions of his role were. Without more, the Court cannot determine that his requested accommodation would have allowed him to perform the essential functions of the position. See White v. Home Depot, U.S.A., Inc., No. DKC 13-0624, 2013 WL 4501328, at *3 (D.Md. Aug. 21, 2013) (granting motion to dismiss where plaintiff failed to allege that he was able to perform his job with the reasonable accommodation requested).

Finally, Bell also does not allege that Medline refused to make a reasonable accommodation. None of Bell's filings state his request to open the facilities' doors were denied. Additionally, Bell states that Medline informed him that it otherwise accommodates this heat issue by monitoring heat in the warehouses. (Opp'n at 1); see London v. Loyola High Sch. of Baltimore, Inc., No. DKC 17-2219, 2019 WL 4673436, at *6 (D.Md. Sept. 25, 2019), ("An accommodation can be reasonable even if it is not the employee's requested accommodation."), aff'd, 806 F.App'x 255 (4th Cir. 2020). Bell is not entitled to his choice of accommodation for a health issue apparently unrelated to his alleged disability. As such, the Court finds that Bell's failure to accommodate claim fails.

Bell's allegations that Defendants failed to call emergency medical services when he reported an elevated heartrate also do not state a failure to accommodate claim. (Compl. at 6, Opp'n at 1). A failure to call emergency services is not a proper basis for alleging a failure to accommodate claim under the ADA. See Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (per curiam) (holding that medical treatment decisions are not a basis for ADA claims); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Thus, the Court will dismiss Bell's failure to accommodate claim.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 16). All of Bell's claims against Medline are dismissed without prejudice. Bell's claims against Field are dismissed with prejudice as amendment would be futile. Should Bell wish to file a motion seeking leave to amend his complaint, attaching his proposed amendment, he must do so within thirty days of the date of this memorandum. A separate Order follows.

Entered this 27th day of March, 2025.

/s/
George L. Russell, III
Chief United States District Judge